Case No. 25-51058

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

STATE OF TEXAS,

*Plaintiff-Appellee*

v.

CENTER FOR BIOLOGICAL DIVERSITY,

*Appellant*

On Appeal from United States District Court for the Western District of Texas

7:24-cv-00233

# BRIEF OF APPELLANT CENTER FOR BIOLOGICAL DIVERSITY

SUBMITTED BY:

Lauren A. Parker (DC 1670885)
Jason C. Rylander (DC 474995)
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
*Counsel for Appellant*
*Center for Biological Diversity*

April 15, 2026

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees** |
|---|---|
| State of Texas | Clayton Smith of Office of the Attorney General of Texas Austin TX |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Center for Biological Diversity | Jason Rylander of Center for Biological Diversity Washington, DC |
| Center for Biological Diversity | Lauren Parker of Center for Biological Diversity Washington, DC |

| **Other Interested Parties:** | **Counsel for Interested Parties:** |
|---|---|
| Doug Burgum, Secretary, U.S. Department of the Interior | David Goode of U.S. Attorney's Office Austin, TX |
| Doug Burgum, Secretary, U.S. Department of the Interior | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| Doug Burgum, Secretary, U.S. Department of the Interior | Emily Polachek of U.S. Department of Justice Bloomington, MN |
| Brian Nesvik, Director, U.S. Fish and Wildlife Service | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| Brian Nesvik, Director, U.S. Fish and Wildlife Service | Emily Polachek of U.S. Department of Justice Bloomington, MN |
| United States Department of the Interior | David Goode of U.S. Attorney's Office Austin, TX |

| | |
|---|---|
| United States Department of the Interior | Caitlyn Cook of U.S. Department of Justice Washington, DC |
| United States Department of the Interior | Emily Polachek of U.S. Department of Justice Bloomington, MN |
| United States Fish and Wildlife Service | Emily Polachek of U.S. Department of Justice Bloomington, MN |

*/s/ Lauren A. Parker*
Lauren A. Parker
Jason C. Rylander
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: 202-868-1008
lparker@biologicaldiversity.org
*Counsel for Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Cir. R. 28.2.3, Appellant, Center for Biological Diversity (the "Center") respectfully requests oral argument.

After many years of advocacy by the Center, the U.S. Fish and Wildlife Service listed the lesser prairie-chicken under the Endangered Species Act ("ESA") in 2025. When the State of Texas and industry groups sued to overturn the listing, the Center sought to intervene. The district court rejected Appellant's motion to intervene, depriving the group that petitioned for the listing of an opportunity to participate as a party and object to any possible settlement in the case.

The Center is concerned that the government will not adequately defend the case, because settlement negotiations (which the Center opposes) are ongoing. Moreover, the government recently agreed to vacate the ESA listing of the lesser prairie-chicken, a similar case where the same judge twice denied the Center the right to intervene. The district court's impossible standard for intervention in these kinds of cases is worthy of review. The Center has never had its day in court and respectfully submit that oral argument will significantly aid the Court's adjudication of this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........ ii
STATEMENT REGARDING ORAL ARGUMENT ........ iv
TABLE OF CONTENTS ........ v
TABLE OF AUTHORITIES ........ vi
JURISDICTIONAL STATEMENT ........ 1
STATEMENT OF THE ISSUES ........ 1
STATEMENT OF THE CASE ........ 2
I. Factual Background ........ 2
II. Legal Standard ........ 4
SUMMARY OF THE ARGUMENT ........ 6
ARGUMENT ........ 7
I. Standard of Review ........ 7
II. The Center Has Standing to Appeal ........ 7
A. The Center's Members Have Independent Article III Standing ........ 8
B. The Center Meets the Requirements for Associational Standing ........ 10
III. The District Court Improperly Denied CBD's Motion to Intervene ........ 11
A. The Center's Motion Was Timely ........ 12
B. The Center Has a Direct, Legally Protectable Interest in Defending the Listing Rule ........ 12
IV. Disposition of This Case Threatens to Impair the Center's Interests ........ 13
A. Federal Defendants May Not Adequately Represent CBD's Interests ........ 14
B. The District Court Applied an Impermissibly Heightened Standard for Intervention ........ 17
CONCLUSION ........ 20
CERTIFICATE OF SERVICE ........ 21
CERTIFICATE OF COMPLIANCE ........ 22

## TABLE OF AUTHORITIES

### Cases

*Aransas Project v. Shaw*,
404 F. Appx. 937 (5th Cir. 2010) .......... 11

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) .......... 6, 15, 17, 19

*Ctr. for Biological Diversity v. U.S. EPA*,
937 F.3d 533 (5th Cir. 2019) .......... 8, 10

*Doe #1 v. Glickman*,
256 F.3d 371 (5th Cir. 2001) .......... 5, 12, 13, 14

*Entergy Gulf States Louisiana, LLC v. U.S. EPA*,
817 F.3d 198 (5th Cir. 2016) .......... 4, 5

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) .......... 19

*Georgia v. U.S. Army Corps of Eng'rs*,
302 F.3d 1242 (11th Cir. 2002) .......... 15

*Guenther v. BP Ret. Accumulation Plan*,
50 F.4th 536 (5th Cir. 2022) .......... 17

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .......... 8

*In re Lease Oil Antitrust Litig.*,
570 F.3d 244 (5th Cir. 2009) .......... 4

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) .......... 4, 5, 17, 18, 19, 20

*Louisiana v. Burgum*,
132 F.4th 918 (5th Cir. 2025) .......... 2, 17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 8, 9, 10, 13

*McDonald v. E.J. Lavino Co.*,
430 F.2d 1065 (5th Cir. 1970) .......... 5

*Newby v. Enron Corp.*,
443 F.3d 416 (5th Cir. 2006) .......... 7

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) .......... 5, 13, 18

*Tex. Democratic Party v. Benkiser*,
459 F.3d 582 (5th Cir. 2006) .......... 8, 11

*Texas v. U.S. Dep't of Interior*,
No. 7:23-cv-00047 (W.D. Tex. 2023) .......... 3, 13

*Texas v. U.S. Dept of the Interior*,
No. 25-50747 (5th Cir. filed Sept. 12, 2025) .......... 4, 7

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) .......... 4, 5, 6, 11, 17, 18

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) .......... 5, 15

*Utah Ass'n of Counties v. Clinton*,
255 F.3d 1246 (10th Cir. 2001) .......... 15, 19

*WildEarth Guardians v. U.S. Forest Serv.*,
573 F.3d 992 (10th Cir. 2009) .......... 19

**Statutes**

28 U.S.C. § 1291 .......... 1

**Rules**

Fed. Civ. P. 24(a)(2) .......... 11

Fed. R. Civ. P. 24 .......... 2

**Other Authorities**

Lesser Prairie-Chicken; Threatened Status With Section 4(d) Rule for the Northern Distinct Population Segment and Endangered Status for the Southern Distinct Population Segment, 87 Fed. Reg. 72,674 (Nov. 25, 2022) .................................. 2

Removal of Northern and Southern Distinct Population Segments of the Lesser Prairie-Chicken from the List of Endangered and Threatened Wildlife in Compliance with Court Order, 91 Fed. Reg. 9,474 (Feb. 26, 2026) .................... 14

## JURISDICTIONAL STATEMENT

The Center for Biological Diversity appeals the district court's November 26, 2025, order denying their motion to intervene in the dunes sagebrush lizard Endangered Species Act listing rule case. Plaintiffs filed a timely notice of appeal.

This Court's appellate jurisdiction to review the district court's final order arises from 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States…").

## STATEMENT OF THE ISSUES

1. Whether the district court erred in denying the Center for Biological Diversity's motion to intervene to defend the final rule listing for the dunes sagebrush lizard under the federal Endangered Species Act, where it appears the federal defendants are presently pursuing a settlement agreement contrary to the proposed intervenor's interests.

## STATEMENT OF THE CASE

### I. Factual Background

The Center for Biological Diversity ("Center") has worked for decades to secure federal Endangered Species Act ("ESA") protection for the dunes sagebrush lizard, including filing the 2004 and 2018 listing petitions that led to the decision at the root of this case. After years of careful consideration and deadline-enforcing litigation by the Center, the U.S. Fish and Wildlife Service published a final rule listing the dunes sagebrush lizard as endangered on May 20, 2024. 89 Fed. Reg. 43,748. The State of Texas subsequently filed suit to overturn the listing decision. In response, the Center promptly filed a motion to intervene under Federal Rule of Civil Procedure 24 in March 2025. ROA.233-260.

The district court denied the motion in November 2025. ROA.347-356. The Center has been the primary petitioner and advocate for the species' listing but the district court found that the Center was not entitled to intervene—either as of right or by permission—on the grounds that the government and proposed intervenor potentially had the same objective to defend the listing rule. ROA.349-355 (citing *Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025)). The case, however, has been stayed since July 2025 to allow the parties to "negotiate in good faith without further litigation." ROA.348. The Center does not believe a settlement is

appropriate and does not support any agreement that could lead to a change in the species' listing status.

In a similar case, before the same district judge, the Center was twice denied intervention in a challenge brought by several states and industry groups challenging the ESA listing of the lesser prairie-chicken. The first motion was timely filed but the court held that the government and proposed intervenors had "the same ultimate objective" to defend the listing and that the Center's motion was premature. Order Den. Mot. to Intervene, *Texas v. U.S. Dep't of Interior*, No. 7:23-cv-00047, Dkt. No. 36 at *8 (W.D. Tex. Aug. 29, 2023) (citing *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)). Months later, after the change in presidential administration, the government instead sought remand with vacatur—demonstrating unequivocally that it did not represent the Center's interests in maintaining the listing rule. But the court denied the Center's renewed motion to intervene and opposition to the settlement as untimely—effectively creating a Catch-22. The groups' intervention motion was deemed *premature* when it appeared the government would defend the listing and *too late* when the government switched positions. Omnibus Order Den. Mot. for Reconsideration, *Texas v. U.S. Dep't of Interior*, No. 7:23-cv-00047, Dkt. No. 109 (W.D. Tex. Aug. 12, 2025). Without any hearing or examination of the administrative record, the court granted the government's motion to vacate the listing.

The Center is presently appealing the intervention denial in the lesser prairie-chicken case, *see Texas v. U.S. Dept of the Interior*, No. 25-50747 (5th Cir. filed Sept. 12, 2025), and now appeals the district court's denial of intervention in *this* case because the district court has a pattern of applying an impossibly high standard for intervention in challenges to federal government actions. This has prejudiced the Center's procedural rights and impaired its longstanding interests in protecting imperiled species.

## II. Legal Standard

The Center sought intervention of right under Rule 24(a), and alternatively, permissive intervention under Rule 24(b). Fed. R. Civ. P. 24. In the Fifth Circuit, intervention of right under Rule 24(a) requires that:

> (1) The application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). Movants have the burden to establish the right to intervene. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). However, the rule "'is to be liberally construed' with 'doubts resolved in favor of the proposed intervenor.'" *Entergy Gulf States La., LLC v. U.S. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009)). Courts are instructed to permit

intervention "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (quoting *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1074 (5th Cir. 1970) (citation omitted)).

The burden to show that the existing parties do not adequately represent the potential intervenors' interest is supposed to be "minimal" and does not require absolute certainty. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972); *Doe #1 v. Glickman*, 256 F.3d 371, 380 (5th Cir. 2001) (same). But the Fifth Circuit applies its own presumption that representation is adequate when "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Entergy Gulf*, 817 F.3d at 203 (citations omitted). That presumption can be rebutted if the intervenor specifies "the particular ways in which their interests diverge from the party's and then identify the particular way in which these divergent interests have impacted the litigation." *Id*. at 204 (quoting *Texas*, 805 F.3d at 663). Put another way, a proposed intervenor may "establish an adversity of interest if 'its interests diverge from the putative representative's interests in a manner germane to the case.'" *Pueblo Entero*, 29 F.4th at 308 (quoting *Texas*, 805 F.3d at 662).

## SUMMARY OF THE ARGUMENT

The district court erred in denying the Center's motion to intervene, and in so doing, set an impermissibly high bar for would-be intervenors in this and similar cases. Under the district court's standard, it is all but impossible for advocacy groups to intervene when the federal government is a defendant and it is not absolutely certain from the outset that the government's position is adverse.

As both the Supreme Court and this Circuit have recognized, "Rule 24 is to be liberally construed" in favor of intervention. *Texas,* 805 F.3d at 656 (citing *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)). Nevertheless, the district court denied the Center's motion to intervene on the grounds that the Center failed to demonstrate that the government would not adequately represent its interests. ROA.347-356.

The Center's interests are not adequately represented here. The district court discounted the current administration's stated priorities concerning ESA enforcement, ROA.233-260, and disregarded evidence that the federal defendants had previously taken actions regarding this and other listings that diverged from the Center's interests. ROA.253-256. The court also failed to consider that the parties were actively pursuing a settlement agreement that, if past actions of this administration are prologue, could lead to remand of the listing and the federal

protections that the Center hopes to maintain. *see Texas v. U.S. Dept of the Interior*, No. 25-50747 (5th Cir. filed Sept. 12, 2025).

The presumption of adequate representation cannot be so stringent as to be irrebuttable. Under this Court's precedent, the Center has demonstrated that the current parties *may* be (and likely are) inadequate to represent its interests. ROA.347-358. Accordingly, the district court should have granted the motion to intervene.

## ARGUMENT

### I. Standard of Review

"A ruling denying intervention of right is reviewed *de novo*." *Edwards v. City of Houston,* 78 F.3d 983, 995 (5th Cir. 1996) (citation omitted). The district court's denial of permissive intervention is reviewed for abuse of discretion. *Newby v. Enron Corp.*, 443 F.3d 416, 423 (5th Cir. 2006) (citation omitted).

### II. The Center Has Standing to Appeal

A showing of Article III standing is not required merely to challenge the denial of intervention; standing becomes necessary only if the intervenor seeks to pursue the merits of the case independently on appeal. *See Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 947 n.3 (N.D. Tex. 2019) (explaining why standing is not required for intervenor-defendants when no additional relief is sought). Nonetheless, because proceedings in the Western District of Texas are currently

stayed for settlement negotiations—and a settlement may be reached before this Court resolves the appeal—the Center includes a recitation of its standing.

**A. The Center's Members Have Independent Article III Standing**

An organization has associational standing when "(1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). An organization's member meets the Article III standing requirements if the member "suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant, and that is likely to be redressed by a favorable judicial decision." *Ctr. for Biological Diversity v. U.S. EPA*, 937 F.3d 533, 536 (5th Cir. 2019) (cleaned up).

To establish Article III standing, there must be an "injury in fact." *Id*. at 537 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Here, the Center's members have Article III standing to sue because they have recreational, scientific, and aesthetic interests in observing the

dunes sagebrush lizard in its natural habitat. *Lujan*, 504 U.S. at 562–63 ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing.").

The Center's members have longstanding recreational, aesthetic, professional, and scientific interests in the dunes sagebrush lizard and its conservation. Center member Scott Trageser is a conservation biologist and professional wildlife photographer. Trageser Decl. ¶ 5. Trageser has traveled to dunes sagebrush lizard habitat in New Mexico and Texas on multiple occasions to photograph the lizard and has plans to visit again. *Id*. at ¶ 11. Center member Noah Greenwald has also visited the dunes sagebrush lizard habitat in New Mexico and viewed the species in its habitat; he has tracked and monitored the species for the past 25 years due to his interests in the conservation and recovery of the lizard. Greenwald Decl. ¶ ¶ 6, 10. Center member Rebecca Brunner is a conservation biologist and a resident of New Mexico that searches for the dunes sagebrush lizard whenever she visits the habitat area. Brunner Decl. ¶ ¶ 1, 9-10. She last searched for the lizard in December 2025 and has plans to visit the lizard's habitat again this winter when temperatures cool. *Id*. ¶ 10.

Second, for Article III standing, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action

of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). In the district court case where the Center sought to intervene, Plaintiffs seek relief that would harm the Center's members and their interests. Center members like Greenwald and Trageser have been injured by the delayed listing of the dunes sagebrush lizard because ESA protections are crucial to the species' survival and recovery. *See* Brunner, Greenwald, and Trageser Decls. Fewer lizards make it more difficult for members to observe and enjoy the species harming their recreational, scientific, and aesthetic interests. Brunner Decl. ¶ ¶ 2, 18; Trageser Decl. ¶ 12. The potential extirpation or extinction of the lizard would profoundly injure the Center's members. Brunner Decl. ¶ ¶ 16-18; Greenwald Decl. ¶ ¶ 11-13; Trageser Decl. ¶ ¶ 21-22.

Finally, Article III requires that the injury can be "redressed by a favorable judicial decision." *Ctr. for Biological Diversity*, 937 F.3d at 536. The Center's members' injuries are redressable because an order of this Court upholding the listing decision would vindicate their interests in seeing the dunes sagebrush lizard continue to receive ESA protection.

**B. The Center Meets the Requirements for Associational Standing**

The Center meets the additional criteria for associational standing because "the interests the association seeks to protect are germane to the purpose of the organization; and neither the claim asserted nor the relief requested requires

participation of individual members." *Tex. Democratic Party*, 459 F.3d at 587. As an organization dedicated to environmental protection and the preservation of species, including the protection of the dunes sagebrush lizard and its habitat, the Center has a clear interest germane to its purpose in defending the dunes sagebrush lizard listing under the ESA. *See* Greenwald Decl. This interest is further demonstrated by its decades-long efforts to ensure ongoing protections for the lizard as detailed in the subsequent paragraphs. For these reasons, CBD's members have Article III standing, and CBD therefore has associational standing.

## III. The District Court Improperly Denied CBD's Motion to Intervene

The district court erred in denying the Center's motion to intervene to defend the final rule listing of the dunes sagebrush lizard under the ESA. A court must permit intervention when a movant (1) files a timely motion; (2) claims an interest relating to the property or transaction at issue; (3) is so situated that disposition of the action may impair that interest; and (4) shows that existing parties may not adequately represent it. Fed. Civ. P. 24(a)(2); *see also Aransas Project v. Shaw*, 404 F. Appx. 937, 940 (5th Cir. 2010). Each requirement was satisfied here. The court's contrary conclusion reflects an unduly narrow application of Rule 24, which must be "liberally construed" in favor of intervention. *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015).

### A. The Center's Motion Was Timely

The Center's motion to intervene was timely because it was filed at an early stage of the litigation before the court issued any substantive rulings. The motion was filed on March 13, 2025, during a period when additional parties could be joined, the Administrative Record was not yet filed, and briefing was not scheduled to begin until September 17, 2025. ROA.229. A motion at that stage of the proceedings would not prejudice any party. And there were no "unusual circumstances" that would weigh against a determination of timeliness. *Doe #1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (setting forth standards for timeliness) (citations omitted). Indeed, the district court did not even rule on the motion until November 26, 2025, while case was (and remains) stayed. Accordingly, timeliness is not an issue in this case.

### B. The Center Has a Direct, Legally Protectable Interest in Defending the Listing Rule

The Center has worked for years to secure federal protection for the dunes sagebrush lizard, including filing the petition and lawsuits that led the U.S. Fish and Wildlife Service to adopt the challenged final rule. ROA.244-247. This lawsuit directly targets that rule and seeks relief that would vacate or undermine the species' ESA protections. Because the action challenges the very regulatory outcome the Center advocated for and helped bring about, the Center has a concrete, legally protectable interest in defending the final rule. *Glickman*, 256

F.3d at 379. Further, the Center submitted declarations demonstrating its members recreational, aesthetic, scientific, conservation, and economic interests in the preservation of the dunes sagebrush lizard. ROA.281-293; *Lujan*, 504 U.S. at 562-63 (recognizing that "the desire to use or observe an animal species, even for purely [a]esthetic purposes, is undeniably a cognizable interest for purpose of standing").

The Center's decades-long advocacy for the lizard establishes a "direct, substantial, and legally protectable" interest in the proceeding. *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (reversing the district court's denial of intervention) (citation omitted). Although the court did not decide whether the Center has an interest in this case, ROA.350, it did determine under similar facts in the lesser prairie- chicken listing case that the organization's interest was sufficient. Order Den. Mot. to Intervene, *Texas v. U.S. Dep't of Interior*, No. 7:23-cv-00047, Dkt. No. 36 (W.D. Tex. Aug. 29, 2023).

## IV. Disposition of This Case Threatens to Impair the Center's Interests

If Plaintiffs succeed—whether through summary judgment briefing or a settlement—the final listing rule may be vacated, remanded, or otherwise weakened. That outcome would directly impair the Center's longstanding efforts to secure ESA protections for the species. The impairment prong does not require certainty of harm; it requires only that the movant's interest "may" be impaired as

a practical matter. *Glickman*, 256 F.3d at 375 (citations omitted). Here, the risk is self-evident: this case seeks to undo the very protections the Center fought to obtain.

That risk is not speculative. A victory for plaintiffs on summary judgment could eliminate the very federal protections for which the Center petitioned and worked over decades to secure. But the federal government's decision to abandon its defense of the lesser prairie-chicken listing poses an additional risk. By agreement of the parties, the dunes lizard could lose critical protections, and the Center would have no recourse. Removal of Northern and Southern Distinct Population Segments of the Lesser Prairie-Chicken from the List of Endangered and Threatened Wildlife in Compliance with Court Order, 91 Fed. Reg. 9,474 (Feb. 26, 2026). The practical reality is that, absent intervention, the Center's interests can be irreparably impaired through negotiated resolution or inadequate defense. Rule 24 exists to prevent precisely that outcome.

### A. Federal Defendants May Not Adequately Represent CBD's Interests

Here, the district court concluded that the Center demonstrated "nothing more than a mere possibility that the interests of the current defendants may at some future time diverge," ROA.353 (citation and quotations omitted). That was error. The Center often finds itself adverse to the federal government in ESA cases,

and in this administration the gap between the Centers' interests and that of the current federal defendants is apparent.

Rule 24 requires only a showing that representation "may be" inadequate—a burden courts have frequently described as minimal. *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). As a general matter, the government must balance a range of institutional and political considerations that the Center does not share. ROA.253-56 (citing *Trbovich*, 404 U.S. at 538-539 (interests of government and private intervenors were not "identical" because the government "has an obligation to protect" a broader "public interest" than the interest private intervenor sought to vindicate)); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254-56 (10th Cir. 2001) ("In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor."); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259-60 (11th Cir. 2002) ("We do not believe that a federal defendant with a primary interest in the management of a resource has interests identical to those of an entity with economic interests in the use of that resource.") (citation omitted)). But beyond these general concerns, the Center identified present, concrete facts that the parties had diverging interests. ROA.233-260. These included statements and actions of the current administration regarding

energy development and species protection that were adverse to the Center's mission. *Id*.

Second, the government historically opposed the Center's interests in timely and effective protection of the lizard. The current administration's policy priorities, in particular, may lead to compromise or abandonment rather than full throated defense of the rule—as actually occurred in the lesser prairie chicken case. ROA.253-256. The Center does not share these interests or policy priorities; the Center's sole interest is the full defense and preservation of the listing rule and the ESA protections it provides. Finally, when the court reached its decision to deny intervention here the case was under a stay to facilitate negotiations for settlement—underscoring the Center's concerns and demonstrating divergence of interests. ROA.332-336; ROA.339-344.

As the lesser-prairie chicken case currently pending before this Court demonstrates, waiting for actual divergence to "impact" litigation before allowing intervention creates a Catch-22: intervention is denied as premature, but later barred as untimely—even when the defendants adopt positions diametrically opposed to intervenors' interests. Rule 24 does not require proposed intervenors to suffer the consequences of that divergence before securing a seat at the table.

The Center effectively rebutted the presumption that the government's representation was adequate and met the minimal burden of showing how that

representation may be inadequate. The district court erred by requiring the Center to demonstrate actual adversity, rather than a likely divergence in interests.

### B. The District Court Applied an Impermissibly Heightened Standard for Intervention

Rule 24 is to be applied flexibly and in favor of intervention. *Texas v. United States*, 805 F.3d at 656. By dismissing the Center's showing as a "mere possibility" and equating this case with *Louisiana v. Burgum*, the district court effectively required proof from the outset of the case that the federal defendants would abandon or materially weaken the rule. That is not the governing standard. The movant need only show that representation may be inadequate and that its interests may be impaired. *Brumfield*, 749 F.3d at 345.

In *Burgum*, this Court explained that a presumption against intervention applies when the movant "has the same ultimate objective as a party to the lawsuit." 132 F.4th 918, 922 (5th Cir. 2025) (quoting *Texas*, 805 F.3d at 661). But a movant can overcome this presumption by showing "adversity of interest, collusion, or nonfeasance on the part of the existing party." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 308 (5th Cir. 2022) (quoting *Texas*, 805 F.3d at 661-62 n.2). An applicant can show "adversity of interest" by showing its interests "diverge from the putative representative's interests in a manner germane to the case." *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) (quoting *Texas*, 805 F.3d at 662).

When the existing party "is a governmental body or officer charged by law with representing the interests" of the movant, a second presumption against intervention applies, but it can be overcome by showing that the intervenor's "interest is in fact different from that of the" governmental party "and that the interest will not be represented by" the existing governmental party. *Pueblo Entero*, 29 F.4th at 308 (quoting *Texas*, 805 F.3d at 661-662).

The Center meets both requirements here. Unlike the intervenor in *Burgum*, the Center has cast considerable doubt on whether it and the government actually share the same ultimate objective. The Center has "pointed to specific conduct" from this administration in this and other cases that suggest its interests will not be adequately represented. The current administration's executive orders (ROA.254), its abandonment of the lesser prairie-chicken listing, and most importantly its willingness to engage in settlement discussions in this case (ROA.360-ROA.365), go well beyond a "mere possibility" that the interests of the proposed-intervenors and the government "may at some future time" diverge and should have been enough to rebut the presumption of adequate representation. *Id*.

As to the second presumption, this Court has recognized that "private interests are different in kind from the public interests of the State or its officials." *Pueblo Entero*, 29 F.4th at 309; *see also Espy*, 18 F.3d at 1208 ("the government must represent the broad public interest, not just the economic concerns of the

timber industry"); *WildEarth Guardians v. U.S. Forest Serv.,* 573 F.3d 992, 996–997 (10th Cir. 2009) (intervenor's showing is easily made when party must rely on government, whose obligation is to represent not only the interest of intervenor but the public interest generally") (quoting *Utah Ass'n of Counties*, 255 F.3d at 1254); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (noting, in an ESA case, that "we have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors."). The government's stated interests in promoting energy development over species conservation and its willingness to engage in settlement discussions again demonstrates motivations that are both broader and likely contrary to those of the Center.

The Center has decades of expertise in litigating endangered species cases. It has urged the government for nearly three decades to recognize the urgent need to protect the dunes sagebrush lizard and its habitat. The Center's focus, and that of its members, is conservation, while the government must balance the interests of multiple constituencies and priorities, including agriculture and energy development. As in *Pueblo Entero*, while at the time of its motion to intervene, the Center could not "say for sure that the state's more extensive interests will *in fact* result in inadequate representation," it could—and did—say that "surely they might, which is all that [Rule 24(a)(2)] requires." 29 F.4th at 309 (citing *Brumfield*, 749 F.3d at 346) (emphasis in original). The committees seeking to intervene in

*Pueblo Entero* "satisfied the minimal burden of showing inadequacy," *id*., and so has the Center here.

Because the Center satisfied Rule 24(a)(2)'s requirements—and because experience has already shown the real-world consequences of denying intervention in materially similar circumstances—the district court's order should be reversed and the case remanded with instructions to grant the Center's motion to intervene.

## CONCLUSION

This Court should reverse the district court's decision to deny the Center for Biological Diversity's motion to intervene in this case.

Respectfully submitted,

/s/ *Lauren A. Parker*
Lauren A. Parker (DC 1670885)
Jason C. Rylander (DC 474995)
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005

*Counsel for Appellant Center for Biological Diversity*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2026, I electronically filed the foregoing Brief of Appellant with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

/s/ *Lauren A. Parker*
Lauren A. Parker
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: 202-868-1008
lparker@biologicaldiversity.org

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32, I certify that this brief complies with:

1) the type-volume limitations of Rule 32(a)(7) because it contains 4,379 words, excluding the parts of this brief exempted by Rule 32(f); and
2) the type-face and type style requirements of Rule 32(a)(5)-(6) because it has been prepared in proportionally spaced typeface (14-point) using Microsoft Word (the same program used to calculate the word count).

/s/ *Lauren A. Parker*
Lauren A. Parker
Jason C. Rylander
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: 202-868-1008
lparker@biologicaldiversity.org
*Counsel for Appellant*